After Recording Return To:
NATIONSTAR MORTGAGE LLC
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

This Document Prepared By:
Azra Habibija
NATIONSTAR MORTGAGE LLC
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

Parcel ID Number:
Prior instrument reference: Book/Liber N/A, of the
Official Records of County, WA.

_____ [Space Above This Line For Recording Data] _____

Original Loan Amount: $460,000.00
New Money: $140,417.79                                                          MIN Number

# LOAN MODIFICATION AGREEMENT
(Providing for Interest Only Payments and Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this **13th** day of **July, 2015**, between **SUZIE EDWARDS and DEBORAH SCOTT** ("Borrower") and **NATIONSTAR MORTGAGE LLC, whose address is 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019** ("Lender"), and Mortgage Electronic Registration Systems, Inc. ("MERS"), and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. _____ "Beneficiary"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated _____, ____ and recorded in **Book/Liber N/A**, of the **Official Records (Name of Records)** of _____ **County, WA (County and State, or other Jurisdiction)** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at **5428 PENINSULA DR SE, OLYMPIA, WA 98513**, the real property described being set forth as follows:

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **July 1, 2015**, the amount payable under the Note and the Security Instrument (the "Unpaid

LOAN MODIFICATION AGREEMENT - NSFixedTemplO

(page 1 of 4)

Exhibit A

Principal Balance") is U.S. $473,555.47, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **2.000%**, from **July 1, 2015**. Borrower promises to make monthly payments of interest of U.S. **$789.26**, beginning on the **1st** day of **August, 2015**, and continuing thereafter on the same day of each succeeding month through **July 01, 2017** (the "Interest Only Period"), after which, commencing on the **1st** day of **July, 2017**, the interest rate will be charged at **4.500%** and borrower shall make payments of principal and interest of **$2,295.20**. Principal and interest Borrower will pay thereafter may change in accordance of the terms of the original note or terms of an active modification to the original note. If on **August 1, 2050** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. <u>Failure to Timely Remit Payments:</u> If at any time during the effective dates of this Modification Agreement the Borrower fails to timely make payments as specified hereinabove and such default or failure continues for more than thirty (30) days, then this Modification Agreement, at the option of Lender, shall terminate and all terms of the Note as originally executed shall be reinstated in full, effective as of the date of this Modification Agreement, and the amounts due and payable under the terms of the Note shall be as originally stated therein, as if this Modification Agreement had never existed. Time is of the essence with regard to all payments specified hereunder. Nothing contained herein shall prevent or preclude Lender from enforcing any of Lender's rights or remedies under the Note, or under any document or instrument evidencing or securing the indebtedness created by or under the Note, or shall be construed as a waiver of any of Lender's rights or remedies thereby created.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument.

6. Borrower understands and agrees that:

   (a) All the rights and remedies, stipulations, and conditions contained in the Security

LOAN MODIFICATION AGREEMENT - NSFixedTempIO

(page 2 of 4)

Exhibit A

Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower

(f) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the Beneficiary, of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. ▮

(g) That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original loan documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

Exhibit A

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
SUZIE EDWARDS  -Borrower

_____ (Seal)
DEBORAH SCOTT  -Borrower

**NATIONSTAR MORTGAGE LLC**

By: _____ (Seal) - Lender
Name:        Azra Habibija
Title: **Assistant Secretary**

_____9/1/15_____
Date of Lender's Signature

_____ Azra Habibija    9/1/15
Mortgage Electronic Registration Systems, Inc - Nominee for Lender
Title: Assistant Secretary

Exhibit A

# AGREEMENT TO MAINTAIN ESCROW ACCOUNT

WHEREAS, SUZIE EDWARDS and DEBORAH SCOTT ("Borrower") desires NATIONSTAR MORTGAGE LLC ("Lender") to collect payments from Borrower to be held by Lender for the payment of certain sums due in connection with Borrower's Note and Security Instrument, dated _____, ____, (hereinafter referred to as "Note" and "Security Instrument" respectively) currently held by Lender;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants contained in this Agreement ("Agreement"), Borrower agrees to pay Lender, on the day Periodic Payments are due under the Note, until the Note is paid in full, or the Escrow Account is otherwise terminated pursuant to this Agreement or in accordance with applicable law, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Security Instrument; and (d) Mortgage Insurance Premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." In the event that Borrower receives bills, assessments, invoices, or other requests for payment of Escrow Items, Borrower shall promptly furnish to Lender all such notices.

Borrower shall pay Lender the Funds for Escrow Items unless this Agreement is terminated either by Lender, or pursuant to applicable law. In the event of termination, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. In the event Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may pay such amount in accordance with the terms of the Note and Security Instrument and Borrower shall then be obligated to repay Lender any such amount. Additionally, if Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may, in accordance with applicable law, require Borrower to maintain an Escrow Account.

Borrower agrees to make an initial payment of Funds to establish the escrow account, which amount shall be based on an estimate of the amount and date of expenditures for future Escrow Items, or otherwise in accordance with the Real Estate Settlement Procedures Act ("RESPA"). The estimate of expenditures of future Escrow Items shall be made based on current data available to Lender. Borrower acknowledges that the actual payments of Escrow Items may vary from the estimated amounts.

Lender will collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time period specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless agreed to in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA. If there is a deficiency

Loan No.: ▉
Borrower: SUZIE EDWARDS and DEBORAH SCOTT

of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument or termination of this Agreement, Lender shall promptly refund to Borrower any Funds held by Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement to Maintain Escrow Account.

_____     7/30/2015
Borrower - SUZIE EDWARDS                   Date

_____     7/30/2015
Borrower - DEBORAH SCOTT                  Date

_____     _____
Borrower -                                                       Date

_____     _____
Borrower -                                                       Date

STATE OF WASHINGTON
County of __Thurston__

I, __DJ Sims__, Notary Public in and for the State of Washington, residing at __Lacey, WA. 98516__, do hereby certify that on this __30th__ day of __July__, __2015__, personally appeared before me __Suzie J. Edwards__ to me known to be the individual(s) described in and who executed the within instrument and acknowledged to me that signed and sealed the said instrument as __her__ free and voluntary act on deed, for the uses and purposes therein mentioned.

Signed and sworn to before me this __30th__ day of __July__, __2015__.

[Notary Seal: D.J. SIMS, STATE OF WASHINGTON, NOTARY PUBLIC, MY COMMISSION EXPIRES 01-28-18]

Notary Public in and for the State of __Washington__
My appointment expires: __1/28/18__

Exhibit A

D.J. SIMS
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
01-28-18

Exhibit A



July 13, 2015

Re: Loan 

    *Notwithstanding anything to the contrary contained in the Loan Modification Agreement, the parties hereto acknowledge the effect of a discharge bankruptcy that may have been granted to the Borrower prior to the execution hereof and that the Lender may not pursue the borrower for personal liability.*

    *However, the parties acknowledge that the Lender retains the certain rights, including but not limited to the right to foreclose its lien under appropriate circumstances. The parties agree that the consideration for this agreement is the Lender's forbearance from presently exercising its rights and pursuing its remedies under the security instrument as a result of the Borrower's default of its obligation there under. Nothing herein shall be construed to be an attempt to collect against the Borrower personally or an attempt to revive personal liability.*

- NATIONSTAR MORTGAGE LLC

Signed the 30th day of July, 2015

_____
Borrower -

_____
Co-Borrower -

9387 01/13                                                (page 1 of 1)

Exhibit A

# LETTER OF ACKNOWLEDGEMENT

July 13, 2015

SUZIE EDWARDS and DEBORAH SCOTT
5428 PENINSULA DR SE
OLYMPIA, WA 98513

RE: Loan number ███████

Dear SUZIE EDWARDS and DEBORAH SCOTT,

Attached for execution is the Modification Agreement for your loan serviced by NATIONSTAR MORTGAGE LLC. The Modification Agreement sets forth the future terms of repayment for your loan, and may include capitalization of certain outstanding past due amounts. **The specific terms are identified in the Modification Agreement, and may include a period of time for which your payment will consist only of interest payments (resulting in no principal reduction) and/or change in the amortization term of your loan** (Such a change may result in you owing a lump sum payment upon maturity of your loan).

In addition to the foregoing, in consideration of Nationstar Mortgage agreeing to the modification of your loan account, you acknowledge and agree that Nationstar Mortgage may maintain an escrow account to collect funds for the payment of future taxes and insurance in accordance with the terms of the attached Agreement to Maintain Escrow Account.

Your initial monthly escrow payment will be **$696.03** and initial monthly payment will be **$1,485.29**.

Should you have any questions regarding the terms of this Letter Acknowledgement or the Modification Agreement, please do not hesitate to contact Natasha Pierce at 214-687-4506.

Sincerely,
NATIONSTAR MORTGAGE LLC

Acknowledged and agreed to by:

_____ (Seal)
SUZIE EDWARDS -Borrower

_____ (Seal)
DEBORAH SCOTT -Borrower

# ERRORS AND OMISSIONS/COMPLIANCE AGREEMENT

Loan Number ███████  Date: **July 13, 2015**

Borrower(s):   **SUZIE EDWARDS and DEBORAH SCOTT**

Property Address:   **5428 PENINSULA DR SE, OLYMPIA, WA 98513**

Lender:   **NATIONSTAR MORTGAGE LLC**

In consideration of **NATIONSTAR MORTGAGE LLC** (the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs, or any municipal bonding authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender. Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses. Borrower's failure to comply with all such requests within such 30 day time period will result in the Lender adjusting the modified terms without the borrower's consent.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

_____  7/30/2015  (Date)
SUZIE EDWARDS -Borrower

_____  7/30/2015  (Date)
DEBORAH SCOTT -Borrower

Exhibit A